I! MURRAY, Judge.
K-Mart Corporation appeals an award of $2,848.00 to Betty Smith and her son, Courtney Smith, for K-Mart’s wrongful detention and search of Courtney on November 11, 1994. Ms. Smith has answered the appeal, seeking an increase in the general damages awarded. We affirm for the reasons which follow.
Testimony and evidence at trial established that Ms. Smith and her sister dropped off their sons, Courtney, age 14, and Derek, age 17, at K-Mart at about 3:30 on the afternoon in question.[1] The two boys went to the jewelry counter and looked at earrings. Courtney selected a pair he liked and handed them to K-Mart employee Jacqueline Luko-vits, who rang up the sale at 3:43 p.m., according to the register receipt. She placed the earrings in a bag and stapled the receipt to the bag. As the boys were leaving the store, security guard Ernest Brumfield stopped them and accused Courtney of having placed two additional pairs of earrings, ^without their display cards, down the front of his pants. Courtney denied the accusation, and proffered the bag and receipt for Mr. Brumfield’s examination. The guard said he was not interested in seeing the bag, but only wanted the earrings Courtney had concealed in his pants. Mr. Brumfield escorted Courtney to the security office in the back of the store, and Derek went to find Ms. Smith and his own mother.
When Ms. Smith arrived, she was permitted to enter the closed office in which Courtney was being held. Her son told her that he had emptied his pockets, but the guard insisted that he drop his pants. Mr. Bruni-field explained that he had seen Courtney drop earrings down the front of his pants, so emptying the pockets did not prove anything. Ms. Smith told Courtney to drop his pants, which he did, but no jewelry was found. The guard then insisted that Courtney, had concealed the earrings in his briefs, but Ms. Smith refused to ask her son to remove his underwear. Mr. Brumfield informed them that the St. Bernard Sheriff’s Office would handle the matter further. While awaiting a deputy sheriff, Courtney’s uncle, a reserve officer, arrived at about 4:30 p.m. and asked that his nephew be released, but the security guard refused.
The St. Bernard Sheriffs Office records showed the call from K-Mart was received at 4:18 p.m., but an accident delayed Deputy Richard Jackson’s arrival at the store until approximately 5:15. He spoke to everyone concerned before telling Mr. Brumfield that he would neither search Courtney personally nor order him' to remove his underwear, and that there were no grounds for an arrest. Courtney Smith was released between 5:30 and 5:40 p.m.
Mr. Brumfield testified that he then returned to the jewelry department and picked up two empty “backboards” from earring sets that he had seen Courtney |3discard. He explained that he knew those were the same “backboards” because Ms. Lukovits always kept the jewelry area very clean. However, he could not produce them for trial because they had been removed from his secured evidence locker for an inventory while he was on vacation, and he never got them back. The total value for the two sets of earrings was between five to eight dollars. Mr. Brumfield prepared a written report of the incident and gave it to K-Mart’s District Loss Control Manager the following Monday, but that also had been lost. While his subsequent report dated November 27, 1995 indicated only that the earrings had been concealed in the front of Courtney’s pants, Mr. Brumfield testified that he had made it clear from the beginning that he knew the merchandise was inside the- boy’s underwear. *1044 He explained that it was for this reason that he refused all offers to inspect and/or open the bag holding Courtney’s purchase.
Courtney and his mother testified that after this incident, he was teased and called a thief by some of his classmates for several weeks. He began sleepwalking and talking in his sleep, prompting three visits to Charity Hospital’s adolescent unit. Both also testified that they had suffered anxiety and frustration because of the wrongful accusation.
The trial court held that K-Mart had exceeded the scope of protection afforded a merchant under Article 215 of the Code of Criminal Procedure, which states in pertinent part:
A. (1) A peace officer, merchant, or a specifically authorized employee or agent of a merchant, may use reasonable force to detain a person for questioning on the merchant’s premises, for a length of time, not to exceed sixty minutes, unless it is reasonable under the circumstances that the person be detained longer, when he .has reasonable cause to believe that the person has committed a theft of goods held for sale by the merchant, regardless of the actual value of the goods. The merchant or his employee or agent may also detain such a person for arrest by a peace officer. The detention shall not constitute an arrest.
J* * ijí ‘ Hi * * L
C. As used in this Article, “reasonable under the circumstances” shall be construed in such a manner so as to include the value of the merchandise in question, the location of the store, the length of time taken for law enforcement personnel to respond, the cooperation of the person detained, and any other relevant circumstances to be considered with respect to the length of time a person is detained.
In this ease, the district court specifically found that the -length of detention was not reasonable under the circumstances. The court noted that Mr. Brumfield did not retrieve the “backboards” until after Courtney and his family left the store, so he had no confirmation that what he had seen was, in fact, the concealment of merchandise. The court stated that, although Mr. Brumfield had provided trustworthy testimony in other cases, the subsequent disappearance of the “backboards” and the original incident report, as well as the lack of reference to these “backboards” in the subsequent report, cast doubt on the guard’s version of events. In addition, the evidence indicated to the court that it was not until Courtney proved he had nothing inside his pants that Mr. Brumfield decided that the earrings were in the boy’s underwear. Under these circumstances, the court found Mr. Brumfield had no reasonable basis for his suspicion, and thus no reasonable grounds for further detention, after Courtney had dropped his pants at about 4:00 p.m.
On appeal, K-Mart contends that this determination was clearly wrong because once it has been decided that the initial detention of a suspect was reasonable, Article 215 permits the merchant to hold the person until either “the merchandise was detected or law enforcement authorities ... arrived on the scene.” K-Mart argues that the plaintiffs’ refusal to cooperate by permitting an inspection of Courtney’s underwear, combined with the Sheriff’s inability to respond immediately to the call, establishes that, although longer than sixty minutes, the | slength of the detention was reasonable under the standard of subsection C of the statute. Citing Freeman v. Kar Way, Inc., 96-8 (La.App. 3d Cir. 11/6/96), 686 So.2d 51, writ not considered, 97-0524 (La.4/18/97), 692 So.2d 429, K-Mart insists that “the fact that no merchandise was detected is immaterial to the reasonableness of the arrest, and thus, length of the detention.” The defendant thus maintains that the judgment must be reversed.
Under Article 215, a merchant cannot be held liable for damages for false imprisonment unless it is proven that there was no reasonable cause to believe a theft had occurred, that unreasonable force was used, or that the plaintiff was unreasonably detained for more than sixty minutes. Dixon v. Winn-Dixie Louisiana, Inc., 93-1627, p. 13 (La.App. 4th Cir. 5/17/94), 638 So.2d 306, 317. Reasonable cause for detention requires “articulable knowledge of particular facts sufficiently reasonable to suspect the *1045 detained person of criminal activity.” McNeely v. National Tea Co., 94-392, p. 11 (La.App. 5th Cir. 3/28/95), 653 So.2d 1231, 1236, writ denied, 95-1531 (La.9/29/95), 660 So.2d 880 (citation omitted). The statute provides immunity only to those merchants who have conducted a reasonable post-detention inquiry. Derouen v. Miller, 614 So.2d 1304 (La.App. 3d Cir.1993). The determination of what is reasonable under the circumstances is a factual finding, reversible on appeal only if unsuppported by the evidence and clearly wrong. Kar Way at pp. 4-5, 686 So.2d at 53.
We find no error of fact or law in the finding of liability here. The trial court found that Mr. Brumfield’s observations justified Courtney’s initial detention for questioning, and that Ms. Smith apparently acquiesced in the request for a search of the boy’s pants. The court determined, however, that without additional evidence that a theft had occurred, the guard’s insistence that Courtney remove his ^underwear and submit to a further search was unreasonable. It was expressly noted that Mr. Brumfield made no attempt to substantiate his accusations by finding the “backboards” and showing them to Ms. Smith. In fact, because there was no mention of this evidence in Mr. Brumfield’s report and the backboards could not be produced for trial, the district court discounted the testimony concerning then-later retrieval. Thus, the determination that the security guard’s articulable knowledge was insufficient justification for any further detention is fully supported by the evidence presented at trial.
K-Mart’s reliance on Kar Way, supra, is misplaced. In that case, as here, a shopper’s actions near an earring display were perceived to be the concealment of merchandise beneath the shopper’s clothes. The customer was seen lingering in one area, looking all around, after which she “put her hand under her shirt near the waistband of her pants.” The Third Circuit found that under those facts, the merchant was reasonable in detaining the shopper until she dispelled suspicion by lifting her shirt and pulling her pants open at the waistband. In arguing that the same result should obtain here, K-Mart ignores the significant fact that its employee did not permit Courtney to leave after he had opened his pants and dropped them to the .floor. Instead, Mr. Brumfield insisted that the boy could not be released until he removed his underpants to prove he had not stolen anything. Thus, Kar Way only reinforces the decision that, under these facts, K-Mart’s detention exceeded that which was reasonable under the circumstances, rendering the defendant liable for the plaintiffs’ damages.
In answering K-Mart’s appeal, Ms. Smith contends that the general damages awarded here, $2,000 for Courtney and $500 for herself, are insufficient when Lcompared to other false imprisonment cases. However, it is well-established that the factfinder has great discretion in determining the amount of general damages, which must be based upon the particular facts presented in each case. La. Civ.Code Ann. art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Therefore, an appellate court cannot disturb a general damage award unless the amount is “beyond that which- a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances” established by the evidence. Youn at 1261. We find no such error in this case, and therefore reject the plaintiffs’ appeal.
For the reasons assigned, the judgment below is affirmed in all respects at defendant’s cost.
AFFIRMED.

. Because there were significant conflicts as to the time of the various events, the district court expressly adopted a "timeline” as part of its factual determinations. We find no manifest error in this finding, and therefore use the times established by the court below in this opinion.